IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DEAN JACKSON KINDER,

     Plaintiff,

v.                                 Civil Action No. 5:15CV50
                                             (STAMP)

JAMES RUBENSTEIN, Commissioner,
PAT MIRANDY, Warden and
DANIEL KIMBLE, Unit Manager,

     Defendants.

**MEMORANDUM OPINION AND ORDER
AFFIRMING AND ADOPTING THE MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATION AND
DISMISSING THE PLAINTIFF'S COMPLAINT**

The pro se[1] plaintiff filed this civil action asserting claims under 42 U.S.C. § 1983 on the court-approved § 1983 form complaint provided by the Clerk of Court. The case was referred to United States Magistrate Judge James E. Seibert under Local Rule of Prisoner Litigation Procedure 2. The defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted, under Federal Rule of Civil Procedure 12(b)(6). Magistrate Judge Seibert issued a report recommending that the defendants' motion to dismiss be granted. The plaintiff filed objections to the report and recommendation. For the following reasons, this Court affirms and adopts the report and

---

[1] "Pro se" describes a person who represents himself in a court proceeding without the assistance of a lawyer. Black's Law Dictionary 1416 (10th ed. 2014).

recommendation, dismisses the plaintiff's complaint, and overrules the plaintiff's objections.

## I. Background

The plaintiff, Dean Jackson Kinder ("Kinder"), was attacked by his mentally disabled cellmate ("R.D.") who Kinder had been "put in charge of as a Handicap Assistant." ECF No. 1 at 7. R.D. verbally threatened Kinder, and Kinder filed a grievance seeking removal from the cell pod. The grievance was accepted and resolved upon initial review, stating that Kinder was "no longer assigned to assist inmate [R.D.]," and that Kinder "requested that [his] bed assignment *not* be changed." ECF No. 1 Ex. 1 at 3 (emphasis added). Then, on the same day the grievance was resolved, R.D. attacked Kinder, and corrections officers intervened. Kinder filed a second grievance alleging that the officers were deliberately indifferent to his safety in violation of the Eight Amendment. The initial reviewers accepted the grievance and denied Kinder's requested action. Kinder appealed the grievance to the Warden, and the Warden affirmed. Kinder then appealed to Commissioner James Rubenstein, and Rubenstein affirmed.

Kinder then filed a complaint under § 1983 alleging that Unit Manager Daniel Kimble, Warden Pat Mirandy, and Commissioner James Rubenstein were deliberately indifferent to Kinder's safety in violation of the Eight Amendment. He alleges that Kimble failed to prevent R.D. from attacking Kinder after Kinder informed him of

2

R.D.'s threats; that Mirandy failed to, in response to Kinder's grievances, properly instruct prison employees regarding prevention of inmate violence; and that Rubenstein failed to respond to Kinder's second grievance or ensure that proper procedures were in place to prevent inmate violence. The defendants filed a motion to dismiss for failure to state a claim. Magistrate Judge Seibert issued a report recommending that the defendants' motion to dismiss be granted. Kinder timely filed objections to the report and recommendation.

## II. Applicable Law

Under 28 U.S.C. § 636(b)(1)(C), this Court must conduct a de novo review of any portion of the magistrate judge's recommendation to which objection is timely made. As to those findings to which objections were not filed, the findings and recommendations will be upheld unless they are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Because Kinder filed objections to the report and recommendation, the magistrate judge's recommendation will be reviewed de novo as to those findings to which objections were made. Although Kinder's objections are generalized and speak to issues not strictly within the report and recommendation, this Court liberally construe's Kinder's objections and will review all of Magistrate Judge Seibert's findings and conclusions de novo.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

This Court must liberally construe pro se complaints. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 2007). While the plaintiff's allegations are assumed to be true, Erickson, 551 U.S. at 93, this Court may not ignore a clear failure in the pleading to allege facts that set forth a claim. See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 390-91 (4th Cir. 1990). This Court may not rewrite a complaint to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), construct the plaintiff's legal arguments for him, id., or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. Discussion

A plaintiff may state a § 1983 claim for an Eighth Amendment violation by showing that prison officials violated their duty to protect him "from violence at the hands of other prisoners," as "[b]eing violently assaulted in prison is simply not part of the

4

penalty that criminal offenders pay for their offenses against society." Farmer v. Brennan, 511 U.S. 825, 833, 834 (1994) (internal quotation marks omitted). "For a claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and that the prison officials acted with "deliberate indifference to [the] inmate['s] health or safety." Id. at 834.

Deliberate indifference requires a showing of two things. First, "that the official in question subjectively recognized a substantial risk of harm. It is not enough that the offic[ial] should have recognized it; they actually must have perceived the risk." Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (emphasis in original). Second, "that the official . . . subjectively recognized that his actions were inappropriate in light of that risk . . . . [I]t is not enough that the official should have recognized that his actions were inappropriate; the official actually must have recognized that his actions were insufficient." Id. (internal quotation marks omitted) (emphasis in original). Knowledge of the risk may be inferred, but the risk "must be so obvious that the fact-finder could conclude that the [official] did know of it because he could not have failed to know of it." Id. (internal quotation marks omitted) (emphasis in original). Moreover, a claim for deliberate indifference requires more than mere negligence, as "deliberate indifference describes a

5

state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835.

A.  Rubenstein

Magistrate Judge Seibert correctly noted that under § 1983 a defendant cannot be held liable under the doctrine of respondeat superior, but rather must be personally involved in the violation of the plaintiff's rights. Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory."). Thus, Rubenstein cannot be liable for his subordinates' alleged deliberate indifference simply by virtue of his supervisory position.

First, Kinder alleges that Rubenstein directly violated his rights by denying his second grievance regarding R.D.'s attack. However, Rubenstein's denial of the second grievance after Kinder was attacked cannot constitute deliberate indifference because it happened after Kinder was harmed. Kinder's only allegation that Rubenstein knew of the attack is from the grievance Kinder filed after the attack. Thus, Kinder does not allege that Rubenstein had subjective knowledge of a substantial risk of R.D. attacking the plaintiff before the attack.

Second, a supervisor may be liable under § 1983 if the conduct causing the deprivation was carried out to effectuate an official policy or custom for which the official is responsible, Fisher v.

Wash. Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982), or if the following elements are shown:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), cert. denied, 513 U.S. 813 (1994). The first element requires a showing that the supervisor had knowledge of his subordinate's conduct, and that such "conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." Id. To establish a pervasive and unreasonable risk of harm, the plaintiff must show "that the conduct is widespread, or at least has been used on several different occasions and that the conduct . . . poses an unreasonable risk of harm of constitutional injury." Id.

Kinder alleges that Rubenstein implemented procedure "in the manner in which violence will be avoided when dealing with other inmates [], especially, the mentally infirm," and that Rubenstein "failed to [e]nsure that such procedures were in place and used to prevent the injury suffered by [Kinder]." ECF No. 1 at 8. However, Kinder fails to allege that Rubenstein had any knowledge that these violence-prevention policies were not being enforced or

7

were so ineffective as to create a "pervasive and unreasonable risk" of constitutional injury to inmates or that the policy's unenforcement or ineffectiveness was "widespread" or resulted in inmate violence on several occasions so as to "pose[] an unreasonable risk of harm of constitutional injury." Shaw, 13 F.3d at 799. Kinder alleges that Rubenstein did implement policies to prevent inmate violence and that those policies failed in a single instance: in preventing R.D. from attacking Kinder. These allegations cannot state a claim for supervisory liability for Rubenstein.

B.  Kimble and Mirandy

Magistrate Judge Seibert concluded that Kinder failed to state claims as to Kimble and Mirandy because they are entitled to qualified immunity, as Kinder failed to state a clear constitutional violation by either of them.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). Courts must consider two steps in determining whether an official is entitled to qualified immunity. Id. at 232. "First, a court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right. Second,

8

. . . the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." Id.

First, Magistrate Judge Seibert concluded that Kinder fails to allege that Kimble had subjective knowledge of a substantial risk of harm to Kinder and consciously disregarded that risk. Kinder alleges that he filed a grievance two days before R.D. attacked him, complaining that R.D. was "verbally abus[ing] and threaten[ing] [him] on almost a daily basis." ECF No. 1-1 at 3. While this grievance did inform Kimble of R.D.'s threats, it did not provide him with any reason to believe that R.D. was going to attack him on February 18, 2015. Further, Kimble's response to the grievance indicates that he did not subjectively believe R.D. posed a substantial risk to Kinder, as Kimble removed Kinder as R.D.'s Handicap Assistant, but did not move Kinder's bed assignment away from R.D. because Kinder "requested that [his] bed assignment not be changed." ECF No. 1-1 at 3. Even if Kinder's grievance provided Kimble with subjective knowledge that R.D. posed a substantial risk of harm to Kinder, Kimble did not consciously disregard that risk. He removed Kinder as R.D.'s Handicap Assistant, and did not change Kinder's bed assignment only because Kinder asked him not to. Kinder failed to allege that Kimble knew R.D. would attack Kinder and consciously did nothing to prevent it. Therefore, Kimble is entitled to qualified immunity.

Second, the magistrate judge concluded that Kinder fails to allege that Mirandy knew of a substantial risk of serious harm to Kinder and consciously disregarded it. Kinder alleges that Mirandy "failed to take corrective action upon the issuance of [a] written grievance," and that he "failed to properly instruct his underlings and to set in m[otion] approved training and instruction[s] to his subordinates to correct the problem of inmate violence." ECF No. 1 at 8. It is unclear which grievance Kinder alleges Mirandy did not act upon. However, Kinder's first grievance was resolved by Kimble and was not appealed to Mirandy for action, and Kinder's second grievance was filed after R.D. attacked him. Thus, Mirandy's inaction as to both grievances is insufficient to state a claim that he subjectively knew R.D. posed a substantial risk to Kinder and that he consciously disregarded that risk.

Kinder's allegation that Mirandy failed to train prison staff regarding inmate violence seems to be a claim for supervisory liability. However, Kinder fails to allege that Mirandy had knowledge that his prison staff's untrained conduct "posed a 'pervasive and unreasonable risk' of constitutional injury" to inmates. Shaw, 13 F.3d at 799. Further, Kinder's allegations do not show "that there was an 'affirmative causal link' between" Mirandy's inaction and R.D.'s attack. Id. Under established procedures, Kinder filed a grievance regarding R.D.'s threats, and Kimble resolved the grievance as discussed above. When R.D.

attacked Kinder, corrections officers quickly intervened and ended the attack. Thus, there is nothing in Kinder's complaint or supporting materials indicating that Mirandy's alleged failure to train staff resulted in R.D. attacking him or that such training would have prevented the attack. Therefore, Mirandy is entitled to qualified immunity.

IV. Conclusion

For the reasons set forth above, the plaintiff failed to state a claim upon which relief can be granted. Therefore, the magistrate judge's report and recommendation (ECF No. 40) is AFFIRMED and ADOPTED. Accordingly, the plaintiff's complaint is DISMISSED. Further, the plaintiff's objections to the report and recommendation (ECF No. 42) are OVERRULED. It is further ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

Should the petitioner choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit on the issues to which objection was made, he is ADVISED that he must file a notice of appeal with the Clerk of this Court within 30 days after the date of the entry of the judgment order.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the pro se plaintiff by certified mail and to counsel of record herein. Pursuant to Federal Rule of Civil

Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:      January 15, 2016

                                        /s/ Frederick P. Stamp, Jr.
                                        FREDERICK P. STAMP, JR.
                                        UNITED STATES DISTRICT JUDGE